MICHAEL D. SYDOW
THE SYDOW FIRM
3355 W. Alabama, Suite 444
Houston, Texas 77098
(713) 622-9700 [Telephone]
(713) 552-1949 [Telecopier]
michael.sydow@thesydowfirm.com
*Counsel for Plaintiffs*

DAVID S. RATNER
DAVID RATNER LAW FIRM LLP
33 Julianne Ct.
Walnut Creek CA94595
(415) 817-1200 [Telephone]
(925) 891-3818 [Telecopier]
david@davidratnerlawfirm.com
*Of Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RAJIV GOSAIN AND HAPPY VALLEY ROAD, LLC,**<br>    **Plaintiffs**<br><br>vs.<br><br>**BERGQUIST WOOD MCINTOSH SETO, LLP, BRUCE MCINTOSH, AND STEPHEN SETO,**<br>    **Defendants**<br><br>---<br><br>**RAJIV GOSAIN AND HAPPY VALLEY ROAD, LLC,**<br>    **Plaintiffs**<br><br>vs.<br><br>**MERLIN LAW GROUP, PA, DENISE SZE, MICHAEL DUFFY, AND WILLIAM MERLIN,**<br>    **Defendants** | **Lead Case No.: 3:18-CV-06343-CRB**<br>**[Filed October 16, 2018]**<br><br>**[Related Case No.: 4:20-cv-00815-JSW]**<br>**[Filed February 5, 2020]**<br><br><br>**FIRST AMENDED COMPLAINT IN RELATED CASE NO. 4:20-CV-00815-JSW AS TO DEFENDANTS, MERLIN LAW GROUP, PA, DENISE SZE, MICHAEL DUFFY, AND WILLIAM MERLIN** |

## JURISDICTION

1. The Court has jurisdiction over this controversy by reason of diversity of citizenship and amount in controversy pursuant to the provisions of 28 USC 1332(a).

2. Plaintiff Rajiv Gosain is a U.S. citizen having a residence in the State of New Jersey.

3. Plaintiff Happy Valley Road LLC is a corporation organized under Delaware law with its principal place of business in Liechtenstein.

4. Merlin Law Group, PA is a professional association or other form of business entity having its principal place of business in the State of Florida, but doing business and practicing law in the State of California. Defendant has been served and has made an appearance contesting service of process herein. Should service of process be found improper, Merlin Law Group, PA may be served with process through its registered agent, CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Dr. Suite 150N, Sacramento, California 95833.

5. Denise Sze is an individual residing in the State of California. Defendant has been served and has appeared herein contesting service of process. Should service of process be found improper, she may be served with process at 2223 S. Bentley Ave. Apt. 202, Los Angeles, California 90064, or at her office, 2049 Century Park E, Suite 650, Los Angeles, California 90067-3131.

6. Michael Duffy is an individual residing in the State of Illinois. Defendant has been served and has appeared herein contesting service of process. Should service of process be found improper he may be served with process at 370 Glenwood Rd., Lake Forest, Illinois 60045, or at his office, 181 W. Madison Street, Suite 3475, Chicago, Illinois 60602.

7.     William Merlin is an individual residing in the State of Florida. He has been served and has appeared herein.

8.     The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

## VENUE

9.     Venue is proper in this District under the provisions of 28 USC 1391(b)(2). A substantial part of the acts or omissions giving rise to this cause of action occurred in the State of California and in this District.

## FACTS

10.    Plaintiff Happy Valley Road LLC ("HVRLLC") is the owner of a residential property located at 4130 and 4134 Happy Valley Road in Orinda, California.

11.    From January 2011 through the end of January 2012 the property was insured under a homeowner's policy underwritten by Federal Insurance Company ("Federal").

12.    In January 2012 Certain Underwriters at Lloyds London ("Lloyds") agreed to insure HVRLLC's property under a homeowner's policy. Lloyds renewed the policy for an additional year at the end of the initial term, through the end of January 2014. Plaintiff Rajiv Gosain was an additional insured under the Lloyds policies.

13.    In August 2011 Plaintiffs discovered a plumbing leak in the area of the master suite at the insured property. Federal was notified, and made an attempt to repair the leak.

14.    In February 2012 Plaintiffs noticed that the plumbing continued to leak.

15.    In February 2012 Lloyds sent Castle Inspection Company to inspect the property.

16.    In March 2012 the repairman previously hired by Federal returned to repair the plumbing leak. Upon opening the floor it was discovered that the structural integrity of the floor had been compromised.

17. In October 2012 Plaintiffs learned that the Orinda Building Department would require substantial structural repairs to the entire property as a result of the damage caused by the plumbing leak, and that the cost of the required repairs would approach $1 million. At or around the same time Federal Insurance began to contest coverage.

18. In January 2013 Plaintiffs notified Lloyds that they were asserting a claim for the damage under the Lloyds policy.

19. In or around the summer of 2013 Plaintiffs, while awaiting coverage advice from Lloyds, engaged counsel to file suit against Federal and its repairmen in order to preserve its claims.

20. In or around April 2014 one of the defendants in the Federal action filed a counterclaim against Plaintiffs.

21. In or around May 2014 Plaintiffs tendered the defense of the counterclaim to Lloyds, and reminded Lloyds of their property damage claim that had been submitted in early 2013.

22. In March 2015 Plaintiffs engaged the law firm of Bergquist Wood McIntosh & Seto, and its partners Bruce McIntosh and Stephen Seto, to take over the litigation against Federal (now associated with Chubb) and all related matters, including the claims against Lloyds, as well as Plaintiffs' claims against certain repair companies, construction companies, construction managers, and others including their respective insurance carriers.. Plaintiffs entered into a written agreement with Bergquist Wood McIntosh & Seto, together with Bruce McIntosh and Stephen Seto (collectively "Bergquist") concerning the representation.

23. In November 2016 Plaintiffs, upon the recommendation of Bergquist, Plaintiffs engaged the Merlin Law Group, PA to associate with Bergquist in prosecuting Plaintiffs' claims

for the property loss at 4130/4134 Happy Valley Road against both Federal and Lloyds, as well as certain repair companies, construction companies, construction managers, and others including their respective insurance carriers.

24.     Merlin Law Group prepared and executed a "Retainer Agreement" with Plaintiffs and assumed joint responsibility for Plaintiffs' claims with Bergquist. The "Retainer Agreement" expressly states that Merlin agrees to represent Plaintiffs in "***an action for damages arising out of property loss located at 4130/4134 Happy Valley Road, Orinda, California against Federal Insurance Company and Underwriters of Lloyds of London…***".

25.     The Merlin Defendants and the Bergquist firm agreed to share the fees payable under the Merlin agreement and assume joint responsibility for Plaintiffs' claims against all defendants and potentially liable persons, including Lloyds. The firms jointly undertook to determine which of the insurers (Federal or Lloyds) was obligated to pay for the damages to Plaintiffs' property, or whether both were so obligated, to determine the merits of Plaintiffs' claims against each, to determine what claims should be asserted against each, and to value Plaintiffs' claims against each.

26.     The Merlin Law Group assigned Denise Sze, Michael Duffy, and William Merlin to handle Plaintiffs' case against Federal and Lloyds. The Merlin Law Group, Sze, Duffy, and William Merlin are hereafter collectively referred to a "Merlin".

27.     Although the policy coverage issues and the damage issues relating to each insurer were inextricably intertwined, Merlin and Bergquist decided to pursue the claims against Federal (Chubb) first.  Merlin and Bergquist represented to Plaintiffs that they had reached an agreement with Lloyds to toll any limitations period that might be applicable to Plaintiffs' claims.

28. Merlin represented to Plaintiffs that they had special expertise and experience in handling insurance coverage claims, especially for losses and damages covered under homeowners' insurance. Merlin further represented that they were a national firm, with both the financial and personnel resources to properly handle Plaintiffs' case against Federal and Lloyds. Those representations were made to Plaintiffs with the intent to induce them to enter into the "Retainer Agreement" with Merlin. Merlin intended Plaintiffs to rely on those representations, and Plaintiffs justifiably relied on them in deciding to enter into the "Retainer Agreement". But for those representations Plaintiffs would not have entered into the "Retainer Agreement".

29. The representations described above were not true. Within a year Merlin advised Plaintiffs that they had "lost" quite a few attorneys, especially in the California office and, in fact, had only two attorneys remaining in the office. Further, Merlin lacked the personnel needed to properly investigate, analyze, prepare, and handle Plaintiffs' claims, but did not reveal these facts to Plaintiff.

30. Merlin failed to properly analyze, prepare, and handle Plaintiffs' claims. For example, they failed to attend depositions in the Federal matter. They failed to respond to discovery requests. They failed to respond to motions filed by Federal, including dispositive motions. They failed to attend hearings and otherwise failed to properly plead, prepare and present Plaintiffs case among other acts and omissions. Specifically, among other acts and omissions, Defendants failed to investigate allegations made, and the defenses asserted by, the insurance companies' in relation to Plaintiffs' property damage and loss.

31. Further, the Defendants failed to properly investigate and defend counterclaims for fraud against Plaintiffs asserted by Federal Insurance company. Such allegations were based upon an investigation allegedly conducted in the Republic of India by a private investigator engaged by

Federal and/or its attorneys and agents. Federal and its counsel falsely alleged that Plaintiffs had made false representations concerning an alleged lease offer for Plaintiffs' property in Orinda. Litigation in India uncovered, and it had been judicially determined in 2016, that the private investigator, with the knowledge and assistance of the insurance carrier and their representatives, had filed fraudulent reports and a false affidavit signed under penalty of perjury in the Contra Costa Superior Court, upon which the counterclaims against Plaintiffs were predicated. Had Defendants provided reasonably skilled and competent representation to Plaintiffs, Federal's misconduct would have been discovered promptly.

32. Additionally, disputes developed between the Defendants and the Bergquist firm as to the apportionment of success fees initially agreed to between the two law firms directly and the respective roles and responsibilities of each in the underlying litigation. Disputes also arose concerning the defense of the counterclaims brought by Federal in the underlying action. The Merlin Defendants took the position that they were not qualified or required to defend the counterclaim as their insurance carrier would not permit it, and the Bergquist firm took the position that they were not obligated to provide such a defense even though their fee agreement specifically stated so, because their fee agreement had been subsumed by the Merlin fee agreement. Defendants and the Bergquist firm also argued over the amount of time each was dedicating, or more accurately not dedicating, to Plaintiffs' case. As a result of these disputes, Plaintiffs' case against its insurance carriers was not properly investigated, analyzed, prepared or presented.

33. In October 2017, Plaintiff Gosain was admitted in the intensive care unit for a life threatening condition at John Muir hospital in Walnut Creek. While Gosain, HVRLLC's sole representative in this matter, was hospitalized Merlin, having failed to properly investigate, analyze, and prepare Plaintiffs' case, having failed to use reasonable skill to investigate the facts

of Plaintiffs' claims and the carrier's counterclaims, and defenses, and having refused to defend the spurious and defensible counterclaims asserted by the insurer-defendants, moved to withdraw as Plaintiffs' counsel.

34. Not to be left the last man standing, Bergquist followed suit just days thereafter.

35. Defendants filed their motions to withdraw knowing that their withdrawal would leave Plaintiffs unrepresented in a complex insurance coverage case 3 months before a jury trial, and that no successor would take over the case since almost no discovery had been conducted by the Defendants, and the litigation had been hopelessly sabotaged by their joint and several acts and omissions of negligence.

36. With their threat to withdraw pending, and knowing that Plaintiffs had been declined by at least ten other law firms it had approached to take over the litigation, the Merlin coerced Plaintiffs to settle their case for no payment, telling Plaintiffs that the case could not be won.

37. In truth the case could have been won but for Merlin's and Bergquist's failure to investigate, plead, analyze, and prepare the case for trial as reasonably competent attorneys would have done. Plaintiffs subsequently learned that, rather than properly handling Plaintiffs' legal affairs, Merlin had spent their time, *inter alia,* arguing with the Bergquist firm over the division of fees and work on Plaintiffs' case, after realizing that their stated "good relationship" with Federal's counsel would not automatically lead to a favorable settlement. The Bergquist firm wanted more than the initial fee share agreed and the Merlin Defendants refused.

38. In so doing, Merlin (and Bergquist) placed their own self-interest above the interests of their client in derogation of their professional duties. As a direct and proximate result

of such acts and omissions which, among others, may be shown at trial, Plaintiffs were forced to abandon their claims against Federal (Chubb).

39. In order to induce Plaintiffs to drop their claims against Federal, Merlin and the other defendants repeatedly assured Plaintiffs that they would instead succeed in obtaining equivalent coverage for Plaintiffs' losses under the Lloyds policy, and that Plaintiffs would not, therefore, be prejudiced by the dismissal of the Federal (Chubb) litigation. Merlin specifically told Plaintiffs that there were no statute of limitations issues that could affect Plaintiffs' claims against Lloyds.

40. By means of such representations and assurances, Defendants induced Plaintiffs to drop their claims against Federal in exchange for mutual releases of Plaintiffs' meritorious claims and the insurance carriers' fraudulent claims.

41. Merlin and Bergquist further failed to reveal to Plaintiffs that the bad faith expert they had engaged had valued Plaintiffs' claims against Federal at not less than $30 million. Indeed, the expert stated that Plaintiffs' claim against Chubb (Federal) Insurance company was amongst the top 5% of all claims he had ever seen in his long career spanning more than 40 years. In fact, the defendants authored an opinion in late 2016, for purposes of soliciting case financing, valuing the Federal claim in excess of $30 million.

42. Ultimately, the court in the Federal action denied Merlin's Motion to Withdraw, but only after Merlin succeeding in persuading Plaintiffs to drop their claims against Federal under the threat of withdrawal.

43. Thereafter, the Merlin continued their representation of the Plaintiffs with Federal to ensure compliance with certain terms of the settlement agreement requiring the Plaintiffs to withdraw their criminal complaint against the Directors and Officers of Chubb Insurance in India.

This process took through December 2018 and the Contra Costa Superior Court held hearings to ensure compliance as late as that date.

44.     In early 2019, less than one year before Plaintiffs filed this action, Merlin defendants met with Federal's Counsel in Emeryville to discuss the findings of the Indian Courts in connection with Federal's fraud counterclaims against Plaintiffs, and emailed the Plaintiffs that Federal disclaimed liability for the illegal acts of its Indian agents, who were then free on bail pending trial.  Also in 2019, less than a year before this action was filed, Merlin provided to Plaintiffs a legal analysis of how the Plaintiffs could either vacate the prior settlement agreement with Federal, or sue them for damages instead. However, Merlin recommended that Plaintiffs not pursue such legal actions, reassuring the Plaintiffs that they would obtain coverage and compensation under the Lloyd's policy instead.

45.     Thereafter, Merlin continued to represent Plaintiffs in connection with their claim under the Lloyds policy. For the balance of 2019, the Defendants claim to have exchanged over 24,000 pages of discovery relating to the Federal Insurance litigation with Lloyds Counsel eventually leading to Rajiv Gosain's examination under oath in France in September 2019. Defendants and Lloyds Counsel relied on the deposition testimony of at least a dozen persons that had been taken in the Federal Insurance litigation. Simultaneously, the Merlin Defendants were in constant communication with Plaintiffs' Counsel at Last and Faoro in San Mateo who were handling the construction defect portion of the original litigation filed against Federal Insurance Company as much of the evidence was common. Counsel at Last and Faoro acted as consultants to the Merlin Defendants for up to 10 hours a week to assist in the claims against Federal and Lloyds. The construction defect litigation is still ongoing and Last and Faoro's fee is to be based

on a percentage of the fee earned by the Bergquist firm in the Federal litigation which was thereafter subsumed by the Lloyd's at the insistence of the Merlin Defendants.

46. Merlin repeatedly advised Plaintiffs that there were no statute of limitations issues affecting the Lloyds policy. Most recently, and within 3 months of the time this suit was filed, Merlin advised Plaintiffs that they had until March 9, 2020 to commence a suit against Lloyds.

47. On December 19, 2019 Lloyds denied coverage for Plaintiffs' damages and losses, alleging that they arose prior to the inception date of the Lloyds policy and, alternatively, that the losses were caused by faulty repairs and were thus excluded from coverage under the policy.

48. After reviewing Lloyds' letter denying coverage, Merlin advised Plaintiffs in writing that Lloyds' analysis was wrong and that there was coverage under the policy. Merlin reiterated its advice that suit would be timely if brought on or before March 9, 2020.

49. In January 2020 Merlin abruptly withdrew from representing Plaintiffs in their claim against Lloyds. Merlin refused to file suit in order to preserve Plaintiffs' rights under the statute of limitations, refused to provide factual information needed to frame Plaintiffs' Complaint against Lloyds, and refused to release their files on the matter to Plaintiffs' new counsel.

50. Although Plaintiffs filed their suit against Lloyds prior to the date Merlin had established as the limitations date, Lloyds has now moved to dismiss Plaintiffs claims alleging that they are barred by limitations.

51. In early 2020, in Plaintiffs' malpractice suit against the Bergquist firm, Bergquist filed a 3rd party complaint against the Merlin Defendants blaming them for negligence and mishandling related to the Federal Insurance litigation.

52. If the allegations of Bergquist's third party Complaint are true, it is apparent that Merlin defendants never actually had any intention of prosecuting Plaintiffs' claims against Lloyds despite their representations and assurances to the contrary.

53. In February 2020, Plaintiffs asked the Merlin Defendants about Bergquist's allegations. Rather than answering Plaintiffs' inquiries, Merlin demanded that they be fully released from any malpractice action relating to the interconnected Federal insurance litigation, failing which they would refuse to proceed with Lloyds claim or, to even hand over the case files pertaining to Lloyds if not released. The instant lawsuit followed.

54. Merlin's representations concerning the certainty of recovery under the Lloyds policy turned out to be false. Merlin repeatedly represented to Plaintiffs, over a course of more than 3 years, that Lloyds had entered into an agreement to toll any statute of limitations as to Plaintiffs' claims. In fact, and to the contrary, the tolling agreement preserved Lloyds' relevant limitations arguments, which Lloyds have now asserted to bar Plaintiffs' claims. Further, as recently as January 2020, Defendants falsely represented to Plaintiff that the statute of limitations on their claims against Lloyds would not expire until mid-March of 2020.

55. Had Plaintiffs been aware of Lloyds' limitations defense, and/or of other defenses asserted by Lloyds, they would never have agreed to dismiss their claims against Federal (Chubb) despite Defendants' recommendation and demand that they do so.

56. Throughout the time relevant to the Merlin's conduct Plaintiff Rajiv Gosain, who is the manager of Plaintiff Happy Valley Road, was gravely ill and unable to effectively deal with, or to objectively evaluate the implications and consequences of, the Defendants' conduct. The Defendants were very well aware of this fact, and took advantage of it.

57. As a result of the Defendants' conduct, Plaintiffs have suffered losses in excess of $30,000,000.00.

58. The Merlin Defendants' engagement contract obligated them to pursue recovery of Plaintiffs' losses from both Federal and Lloyds until it was determined which carrier was liable, or if both carriers were liable. Plaintiffs did not engage the Merlin Defendants to pursue separate claims, but to pursue one set of claims against multiple liable or potentially liable defendants as is clearly stated in the fee contract. Merlin Defendants continued to handle Plaintiffs' case until February 2020, less than one month before Plaintiffs filed this suit, and a continuous attorney-client relationship existed between them up to the date they abandoned Plaintiff, on or about February 4, 2020.

59. At the time Merlin Defendants abandoned Plaintiffs they represented that Plaintiffs had "ample time" to file their claims against Lloyds, as set out in an email from the Merlin Defendants' counsel dated February 4, 2020.

60. At all relevant times, the subject matter of the litigation against Federal and Lloyd's was overlapping and so inextricably intertwined that either or both the carriers were liable for the property damage suffered by Plaintiffs.

### CAUSES OF ACTION

**NEGLIGENCE**

61. Plaintiffs repeat and reallege the allegations in paragraphs 1-60 above.

62. Defendants failed to exercise the requisite standard of professional care and ethics in representing Plaintiffs, and such failures proximately have caused and will cause Plaintiffs to sustain substantial monetary damages, as yet unliquidated, but greatly exceeding the minimum jurisdictional limits of the Court.

63. Specifically, but without limitation, Defendants represented to Plaintiffs that they had special competence and expertise in handling insurance coverage cases under California law.

64. Defendants knew or should have known that Plaintiffs' policy with Lloyds had a contractual limitations and notice clauses that could extinguish Plaintiffs' claims.

65. Defendants failed to advise Plaintiffs of the possible application of the limitation and notice clauses in the Lloyds policy.

66. Defendants knew or should have known that the Lloyds policy excluded damages due to faulty workmanship or repairs.

67. Defendants failed to advise Plaintiffs of the exclusions contained in the Lloyds policy, which is one of the bases on which Lloyds contends that it is not obligated to cover Plaintiffs' losses under such policy.

68. Defendants negligently advised Plaintiffs to settle their claims against Federal Insurance without properly advising Plaintiffs of the limitations, notice, exclusion, and other clauses in the Lloyds policy that made recovery thereunder uncertain.

69. Defendants failed to exercise that level of care and skill that would have been exercised by reasonably competent attorneys in the analysis, investigation, and preparation of the Federal case, in recommending the settlement of the Federal case for no compensation, and in assuring Plaintiffs that they would instead recover under the Lloyds policy.

**FRAUD**

70. Plaintiffs repeat and reallege the allegations in paragraphs 1-60 above.

71. Merlin committed actual fraud against Plaintiffs by, *inter alia*, representing to Plaintiffs that they had the personnel and financial resources to properly handle Plaintiffs' claims, failing to disclose to Plaintiffs the true value of their claims, and the true reasons for Defendants'

desire and imperative to settle Plaintiffs' claims against Federal for far less than their true value, in advising Plaintiffs that their recovery under the Lloyds policy was assured and/or probable, and in failing to disclose the limitations and other defenses available to Lloyds which are now being asserted to bar Plaintiffs' claims.

72. Further, Merlin represented to Plaintiffs that they intended to pursue Plaintiffs' claims under the Lloyds policy when, it appears, they had no intention of doing so.

**CONVERSION (MONEY)**

73. Plaintiffs repeat and reallege the allegations in paragraphs 1-60 above.

74. Merlin and Bergquist settled, in part, some of Plaintiffs claims against some of the repair and construction defendants in the underlying action, but have exercised dominion or control over such funds inconsistent with the rights of Plaintiffs, who are the true owners of the funds by, *inter alia,* failing and refusing to transmit those funds to Plaintiffs.

75. The conversion occurred in March 2018 when Defendants refused to account for the settlement funds, or to pay any part of them to Plaintiffs.

**CONSPIRACY, JOINT VENTURE, AND JOINT AND SEVERAL LIABILITY**

76. Plaintiffs repeat and reallege the allegations in paragraphs 1-60 and 73-75 above.

77. Merlin and the Bergquist firm jointly undertook to represent Plaintiffs and to be responsible for the handling of Plaintiffs' case.

78. Merlin Defendants are therefore responsible and liable for the acts and omissions of the Bergquist firm, under their agreement with Plaintiffs or as joint venturers or participants in a joint enterprise, or as agents of one another.

79. Merlin acted in concert with Bergquist to accomplish illegal acts including, without limitation, failing and refusing to pay Plaintiffs money and property that belong to them, exercising

dominion or control inconsistent with the rights of Plaintiffs as the true owners of the funds and property, and other acts that may be shown at trial. Merlin Law Group, Sze, Duffy, and William Merlin further acted in concert with Bergquist and with each other to commit fraud upon Plaintiffs by misrepresenting the value of Plaintiffs' claims against Federal (Chubb), by misrepresenting their activities in the prosecution of Plaintiffs' claims, by misrepresenting the facts and law concerning the liability of the Lloyds underwriters on the Lloyds policies, and the defenses available to them, and other acts and omissions that may be shown at trial.

80. Defendants concealed their misconduct and negligence from Plaintiffs, and Plaintiffs were not able to discover it until weeks before commencing this action.

### PRAYER

**WHEREFORE** Plaintiffs request the following relief:

1. That citation issue compelling the Defendants to appear and answer;

2. That the Court appoint a person to serve the citation upon Defendants if they fail to waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure;

3. That after trial judgment be entered in Plaintiffs' favor for all damages and relief assessed by the finder of fact;

4. That Plaintiffs be awarded punitive or exemplary damages, costs and attorneys' fees as assessed by the finder of fact; and

5. That Plaintiffs be awarded such other relief, special and general, as they may be entitled to receive.

Dated: July 27, 2020                     Respectfully submitted,

/s/ Michael D. Sydow
Michael D. Sydow
**THE SYDOW FIRM**

Texas Bar No. 19592000
3355 W. Alabama, Suite 444
Houston, Texas 77098
(713) 622-9700 [Telephone]
(713) 552-1949 [Telecopier]
michael.sydow@thesydowfirm.com

***ATTORNEY FOR PLAINTIFFS***

**OF COUNSEL:**

DAVID S. RATNER
DAVID RATNER LAW FIRM LLP
33 Julianne Ct.
Walnut Creek CA94595
(415) 817-1200 [Telephone]
(925) 891-3818 [Telecopier]
david@davidratnerlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 27th day of July, 2020, I caused to be electronically submitted the foregoing document with the clerk of court for the United States District Court, Northern District of California using the electronic case files system of the Court. I hereby certify that I have caused all counsel of record to be electronically served via the Court's CM/ECF system.

/s/ Michael D. Sydow
Michael D. Sydow