August 3, 2022


**VIA E-FILING**

Magistrate Judge Laurel Beeler
USDC, Northern District of California
Courtroom B – 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102


**Re:**     ***Gosain, et al. v. Bergquist Wood Mcintosh Seto, LLP, et al.***
          ***Case No. 4:18-cv-06343-HSG***

Your Honor:  This joint discovery letter brief is submitted by the Defendant Merlin Law Group ("MLG") and Plaintiffs Rajiv Gosain and Happy Valley Road, LLC ("Plaintiffs").

**MLG's Position**:  **(1)** ***Plaintiffs' failure to comply with a Court Order***.  On July 5, 2022, this Court issued Discovery Order # 4 (ECF No. 188), which required among other things, that "plaintiffs must provide supplemental verified responses to the defendant's interrogatories and requests for production that are consistent with this order within 14 days", i.e. on or before July 19, 2022.[1]  Plaintiffs did not provide a single supplemental verified response to any of the discovery at issue in that Order and did not produce a single further page for document by the Court's deadline.[2]  Plaintiffs have also not timely sought any relief from their waiver of any privilege or other objections, despite the Court giving Plaintiffs one final opportunity to do so. ECF No. 188 ("…but the court will allow the plaintiffs an additional opportunity to establish good cause for the untimely responses given the severity of the waiver at issue here (attorney-client privilege).").

MLG requests that the Court set a briefing and hearing schedule for a Rule 37 sanctions motion given the repeated warnings that monetary, evidentiary, and terminating sanctions could be issued against Plaintiffs.  *See* ECF No. 176 and 180.

---

[1] The July 19 deadline was prior to Mr. Gosain's father passing away.  At no point prior to that deadline, did Plaintiffs seek any extension either from Merlin or the Court.
[2] After MLG sent this draft letter to counsel, Plaintiffs made a supplemental production of emails; however, they have still not provided the Court Ordered discovery responses.

Magistrate Judge Laurel Beeler
August 3, 2022
Page 2

On January 4, 2022, *less than three weeks after the parties* Rule 26 conference, MLG served written discovery on Plaintiffs.  Plaintiffs' responses to MLG's written discovery was due on February 5, 2022.  However, Plaintiffs never requested any extension of time and did not serve any timely responses or objections.[3]  After Plaintiffs repeatedly failed for months to commit to any date certain as to when the discovery would be responded to and whether such responses will be without objections, MLG was left with no choice but to seek a court order compelling compliance.  On April 29, 2022, MLG filed joint discovery letter # 1.[4]  *See* Joint Letter Br.-ECF No. 167.  On May 6, 2022, the Court entered a Discovery Order # 1 against Plaintiffs.  ECF No. 170.  The Court Ordered written responses and documents to be provided no later than May 19, 2022, i.e. in sufficient time before the June 1 mediation.  The Order also addressed Plaintiffs' defective initial disclosures and next steps to schedule depositions.

On May 24, 2022, after Plaintiffs disregarded Discovery Order # 1 by failing to serve complete verified written responses by the ordered deadline, MLG filed joint discovery letter # 2 seeking a further order and as well as a briefing and hearing on Rule 37 sanctions.  *See* Joint Letter Br.-ECF No. 172.   On May 27, 2022, the Court issued Discovery Order # 2, which ordered a second date for compliance, June 9, 2022, and included an explicit warning to Plaintiffs and their counsel of the sanctions available to the Court if Plaintiffs continue to refuse to comply with their discovery obligations.  ECF No. 176.  While Plaintiffs did finally serve some responses in June 2022, more than 6 months after the discovery was originally served, Plaintiffs continued to fail to provide complete and non-evasive responses to that written discovery, failed to adequately search for and produce all responsive documents, and then refused to provide available deposition dates,[5] all of which were in direct violation of the Court's Orders and prejudiced MLG's ability to complete discovery prior to the discovery cut-off.  On June 16, 2022, MLG filed joint discovery letter # 3 to address these issues.  *See* Joint Letter Br.-ECF No. 179.   On June 17, 2022, the Court issued Discovery Order # 3 ordering Plaintiffs to provide all available dates for his deposition to take place in June and July 2022. ECF No. 180.  On June 23, 2022, MLG filed joint discovery letter # 4 to address Plaintiffs' incomplete and evasive responses to

---

[3] Plaintiffs contend that Gosain "suffered health problems "[**b]efore the Merlin Defendants or the Bergquist Defendants served discovery on Plaintiffs**" (ECF No. 178 at p. 3, ln 13-14).  However, Plaintiffs never once raised these health issues at any time during the Rule 26 conference or before the deadline for responding.  In fact, the first time Plaintiffs' counsel raised his clients' health concerns was in March 2021.

[4] MLG did not seek monetary sanctions at that time because it was the first discovery motion it filed even though Plaintiffs caused MLG to incur substantial attorneys' fees to address Plaintiffs' failure to comply with discovery served nearly six months ago.

[5] In regards to depositions, Discovery Order # 1 required that "[w]ithin two weeks of the [June 1] mediation, the parties must agree on a [deposition] schedule."  Discovery Order # 1 - ECF No. 170 filed 5/6/22.  Mr. Gosain refused to participate or attend the mediation and it was completed without any settlement on June 1, 2022.

Magistrate Judge Laurel Beeler
August 3, 2022
Page 3

the interrogatories and document requests that were served back in January 2022.[6]   *See* Joint Letter Br.-ECF No. 181.   On July 5, 2022, the Court issued Discovery Order # 4.   ECF No. 188.

(2) **Plaintiffs' Failure to Proceed with Depositions**:   Mr. Gosain's deposition was scheduled to commence on July 25-29, 2022, after the Court Ordered him to provide available dates, and was conditioned on Plaintiffs' complying with outstanding discovery obligations.   On July 21, 2022, two business days prior to the deposition and after counsel has spent days preparing for the deposition to proceed, Plaintiffs' counsel wrote "[w]e have just been notified that Mr. Gosain's father has passed away and that Mr. Gosain will not, therefore, be available to attend his deposition next week."   On July 22, 2022, MLG wrote an email asking several questions about how Mr. Gosain plans to proceed with this litigation, if all.   *See* **Exhibit 1**.   The current stipulated scheduling order, including other depositions, the discovery cut off and trial date, were made relying on Mr. Gosain's deposition commencing the week of July 25 and other depositions proceeding as requested by Plaintiffs.

On June 7, 2022, Plaintiffs requested for the first time available dates for depositions of the MLG individual defendants (Sze, Duffy, and Merlin) in addition to MLG attorney Victor Jacobellis. Two days later, on June 9, MLG sent and confirmed available dates for all four of these depositions to be completed.   On July 11, 25, and 26, Plaintiffs confirmed these depositions, including Mr. Jacobellis' deposition on August 2 and Ms. Sze on August 10.   On July 28, Plaintiffs' counsel sent an email stating, in part, "I have been instructed to reschedule the depositions for next week."   The meet and confer exchanges on those depositions is attached as **Exhibit 2**.   MLG has asked Plaintiffs to confirm the remaining depositions, but Plaintiffs failed to do so.   *See* **Exhibit 2**.

**Plaintiffs' Position**:   Attached is the Declaration provided by Mr. Gosain with regard to his health and the death of his father.   The Declaration of Mr. Gosain states that he is not only a named Plaintiff but also the manager of Plaintiff Happy Valley Road LLC. Mr. Gosain's declaration states that he was hospitalized in Gassan and Frejus France beginning in December 2021. He states that he was diagnosed with and treated for pulmonary embolism, cardiac issues, extremely high blood pressure, and adenal tumors, and that he is still under medical care, lacks mental acuity, and struggles with the activities of daily living. He states that he is the person knowledgable concerning the discovery requested in this case, and he has struggled to assist with the discovery in the case. He futher states that he is incapacitated at this time and cannot find new counsel. The further states in his declaration that his father died of cancer on July 21, 2022 and that he and his father adhere to the traditional rules of the Brahmin Hindu religion and caste. His declaration details the religious duties he must undertake and the rights he must observe as an adherent of that religion, and that he would disregard those duties at the peril of his father's soul and his family's welfare. Attached to his declaration are excerpts from scholarly

---

[6] In Discovery Order # 3, the Court required the parties to refile a joint discovery letter concerning the written discovery with one exhibit that had all the discovery at issue.

Magistrate Judge Laurel Beeler
August 3, 2022
Page 4

publications of the University of California showing the religious and cultural duties he must perform. His declaration further states that the completion and fulfilllment of these rites and duties require at least four months during which he cannot participate in or assist with discovery in this case. His declaration is attached to this letter.

Counsel has produced the documents so far provided by the plaintiffs, and cannot furnish further discovery without Mr. Gosain's input and active participation. Further, even though not required by the Federal Rules of Civil Procedure, Mr. Gosain has provided a verification of the responses so far made to the Requests for Production. Attached to this letter is a copy of the verification.

Mr. Gosain has stated that imposition of sanctions or refusal to allow Mr. Gosain to complete his religious duties would be detrimental to his father's soul and to his family's welfare as required by the Hindu religion, and requests that his religious beliefs be respected. Although Judge Gilliam has moved the discovery deadline in this case, Mr. Gosain states that insufficient time will remain to complete discovery after the completion of his religious rites and duties. He has therefore instructed that a Motion to Stay this case be filed.

Very truly yours,

*/s/ Peter H. Bales*

Peter H. Bales
Counsel for MLG

*/s/ Michael Sydow*

Michael Sydow
Counsel for Plaintiffs

# EXHIBIT 1

**Bales, Peter**

| | |
|---|---|
| **From:** | Michael Sydow <michael.sydow@thesydowfirm.com> |
| **Sent:** | Thursday, July 28, 2022 9:25 AM |
| **To:** | Bales, Peter |
| **Cc:** | Amber Kaiser; gstilson@vmbllp.com; Janie Crowley; MacGregor, Jessica; David Ratner |
| **Subject:** | Re: 07/21/22 Gosain, et al. v. Bergquist Wood Mcintosh Seto, LLP, et al. - USDC Case No. 3:18-cv-06343-CRB |

I suspect my clients' responses will be essentially the same, but as soon as I receive them I will convey them to you.

Get Outlook for iOS

**From:** Bales, Peter <pbales@longlevit.com>
**Sent:** Thursday, July 28, 2022 11:22:17 AM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; gstilson@vmbllp.com <gstilson@vmbllp.com>; Janie Crowley <jcrowley@longlevit.com>; MacGregor, Jessica <jmacgregor@longlevit.com>; David Ratner <david@ratnermolineaux.com>
**Subject:** RE: 07/21/22 Gosain, et al. v. Bergquist Wood Mcintosh Seto, LLP, et al. - USDC Case No. 3:18-cv-06343-CRB

Mr. Sydow, Any responses to any of the questions raised in my July 22 email below?  Merlin would like to get the discovery issues before the Court as promptly as possible.  Thank you, Peter

**From:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Sent:** Friday, July 22, 2022 2:47 PM
**To:** Bales, Peter <pbales@longlevit.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; gstilson@vmbllp.com; Janie Crowley <jcrowley@longlevit.com>; MacGregor, Jessica <jmacgregor@longlevit.com>; David Ratner <david@ratnermolineaux.com>
**Subject:** Re: 07/21/22 Gosain, et al. v. Bergquist Wood Mcintosh Seto, LLP, et al. - USDC Case No. 3:18-cv-06343-CRB

I am not in violation of any court order. I will look at your proposed letter this weekend or Monday as I have been in depositions in another case this week. We have referred your other inquiries to our clients for instructions.

Sent from my iPhone

> On Jul 22, 2022, at 4:41 PM, Bales, Peter <pbales@longlevit.com> wrote:
>
> Mike, Sorry to hear this news.
>
> My clients do have a few questions as they have incurred substantial fees to prepare for this deposition and the scheduling order, including other depositions, the discovery cut off and trial date, were made relying on this deposition commencing next week.  You and your clients also violated the Court's most recent discovery order and are still not in compliance.
>
> When did this happen?

Will Gosain be seeking any relief from the Court in regards to the scheduling order?   If so, what and when?

When will Gosain be providing dates for his deposition?

My clients do need the Court to address the discovery order violations.  I sent you a letter earlier this week with my clients' positions.  When can you get me your position statement on those?

While my clients are more than willing to confer on the best ways to address all of the above in light of the situation, my clients also cannot be further prejudiced on their ability to collect evidence and defend this lawsuit.  Unfortunately, your clients have had a long history of not complying with discovery, avoiding depositions, and not always being entirely truthful to the Court or counsel.   This history and background makes it a little more complicated and difficult to find a resolution that works for all parties.

If you want to set up a time to discuss next week, let's do so.

Regards, Peter

On Jul 21, 2022, at 1:37 PM, Amber Kaiser <amber.kaiser@thesydowfirm.com> wrote:

Good Afternoon:

Attached please find letter of today's date from Mr. Sydow regarding the referenced matter.

Please do not hesitate to contact us with any questions.

Thank you,

Amber Kaiser,
Paralegal
The Sydow Firm
3355 W. Alabama, Suite 444
Houston, Texas 77098
(713) 622-9700 [Telephone]
(713) 552-1949 [Telecopier]
amber.kaiser@thesydowfirm.com

## NOTICE BY THE SYDOW FIRM

**To the extent this communication contains any statement regarding federal taxes, that statement was not written or intended to be used, and it cannot be used, by any person (i) as a basis for avoiding federal tax penalties that may be imposed on that person, or (ii) to promote, market or recommend to another party any transaction or**

matter addressed herein.

This message, as well as any attached documents, contains
information from the law firm of The Sydow Firm that is
confidential and/or privileged, or may contain attorney work
product.  The information is intended only for the use of the
addressee named above.  If you are not the intended recipient, you
are hereby notified that any disclosure, copying, distribution or the
taking of any action in reliance on the contents of this message or its
attachments is strictly prohibited, and may be unlawful.  If you have
received this message in error, please delete all electronic copies of
this message and its attachments, if any, destroy any hard copies you
have created, without disclosing the contents, and notify the sender
immediately.  Unintended transmission does not constitute waiver of
the attorney-client privilege or any other privilege.

Unless expressly stated otherwise, nothing contained in this message
should be construed as a digital or electronic signature, nor is it
intended to reflect an intention to make an agreement by electronic
means.

Unless expressly stated in this email, nothing in this message should be
construed as a digital or electronic signature within the meaning of
"Electronic Signatures" in the Global and National Commerce Act or any
other law of any jurisdiction including, without limitation, the Uniform
Electronic Transactions Act, enacted in any State. All statements,
representations, commitments or any other undertaking contained or
allegedly contained herein is subject to final documentation without which it
shall not be binding.

# EXHIBIT 2

**Bales, Peter**

| | |
|---|---|
| **From:** | Bales, Peter |
| **Sent:** | Monday, August 1, 2022 12:47 PM |
| **To:** | Michael Sydow |
| **Cc:** | Amber Kaiser; MacGregor, Jessica; gstilson@vmbllp.com; kbridgman@vmbllp.com; Neil Ison |
| **Subject:** | RE: Deposition dates (Merlin Defendants) |

Mike, It is Merlin's position that Plaintiffs unilaterally cancelled Mr. Jacobellis' deposition without substantial justification knowing that Merlin's position is that Plaintiffs have foregone the opportunity to take that deposition.  In my email below from last week, I asked Plaintiffs to let us know no later than today, August 1 at 12 noon, to confirm that Denise Sze's deposition is proceeding on August 10 as agreed.  Since I have not heard from Plaintiffs, I take it that your client's instructions to you are to unilaterally cancel that deposition as well.  Like Mr. Jacobellis, Merlin does not agree to reschedule Ms. Sze and takes the position that Plaintiffs have forgone that deposition as well.  If Plaintiffs are planning on going forward with Mr. Duffy and/or Mr. Merlin's depositions in September as agreed please let us know as soon as possible as we are currently holding the dates agreed (9-12 for Mr. Merlin and 9-15 for Mr. Duffy).  If your clients' instructions to you are to cancel those depositions, please let us know that so we can plan accordingly.

We are also still waiting on Mr. Gosain's deposition dates to reschedule the deposition that Plaintiffs unilaterally canceled.  Merlin needs that deposition to be completed as soon as possible.

Regards, Peter

---

**From:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Sent:** Thursday, July 28, 2022 9:16 AM
**To:** Bales, Peter <pbales@longlevit.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>; gstilson@vmbllp.com; kbridgman@vmbllp.com; Neil Ison <neilisonlaw@gmail.com>
**Subject:** Re: Deposition dates (Merlin Defendants)

I have sent your prior email to my clients and will let you know about the depositions if I receive further instructions. As of now my instructions are to reschedule the depositions.

Get Outlook for iOS

---

**From:** Bales, Peter <pbales@longlevit.com>
**Sent:** Thursday, July 28, 2022 11:13:50 AM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>; gstilson@vmbllp.com <gstilson@vmbllp.com>; kbridgman@vmbllp.com <kbridgman@vmbllp.com>; Neil Ison <neilisonlaw@gmail.com>
**Subject:** RE: Deposition dates (Merlin Defendants)

Mr. Sydow, I understand you are not a party and are passing along your client's instructions.  I am conveying to you my clients' position on this issue.  The fact remains that that earlier this week Plaintiffs' counsel twice confirmed the depositions.  Whether or not that was with or without your client's approval/instructions is something I do not know and likely will never be privy to, but it is a fact that caused me and my clients to rely on these depositions going

1

forward.   Knowing Merlin's position and the risk that Plaintiffs will forgo these depositions if not taken as confirmed, please let me know by noon today PST whether Plaintiffs intend on proceeding with Mr. Jacobellis on August 2.  Let me know if you want to confer on these issues over the phone and when you can do so this morning.

Regards, Peter

---

**From:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Sent:** Thursday, July 28, 2022 8:50 AM
**To:** Bales, Peter <pbales@longlevit.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>; gstilson@vmbllp.com; kbridgman@vmbllp.com; Neil Ison <neilisonlaw@gmail.com>
**Subject:** Re: Deposition dates (Merlin Defendants)

As you should know I am not a party to this case and can only convey to you Mr. Gosain's instructions. Most attorneys know that one is bound to do that. Your assertions that might be read otherwise are therefore entirely in error and I request that you acknowledge and cease.

Sent from my iPhone

> On Jul 28, 2022, at 10:37 AM, Bales, Peter <pbales@longlevit.com> wrote:
>
>
> Mr. Sydow,  Merlin is not agreeable to reschedule or further delay these depositions based on your email below.  You and your client have not provided sufficient information to evaluate a justification for rescheduling these depositions and further prejudicing my clients.  All you have told us is that you have "been instructed to reschedule" without any explanation.
>
> Over the last several weeks and especially this week, my clients and I have spent significant time, resources and fees to prepare for these depositions relying on your repeated confirmations over the past month that these depositions were going forward.  We also set aside days next week and the following for these depositions to proceed.  Now, on the eve of Mr. Jacobellis' deposition you tell us that your client is instructing you to cancel it without any explanation.  Merlin's position is that Plaintiffs' counsel should go forward with these depositions or cancel them at Plaintiffs' prejudice.   In other words, at this time Merlin is not agreeable to further delay these depositions and will not be offering alternative dates.  Knowing Merlin's position and the risk that Plaintiffs will forgo these depositions if not taken as confirmed, please let me know by noon today PST whether you intend on proceeding with Mr. Jacobellis on August 2.  Please do the same for Ms. Sze no later than August 1 at 12 noon to confirm that her deposition is proceeding on August 10 as agreed.
>
> These depositions were confirmed several times by you and we relied on those representations.  On June 7, 2022, Plaintiffs requested for the first time available dates for depositions of the Merlin individual defendants (Sze, Duffy, and Merlin) in addition to Merlin attorney Victor Jacobellis.  Two days later, on June 9, Merlin sent and confirmed available dates for all four of these depositions to be completed.  On July 11 you confirmed these depositions, including Mr. Jacobellis' deposition on August 2.  On July 25, I again asked for confirmation that the Jacobellis deposition was going forward.  ("I do not want to spend my time and my client's time preparing for this deposition if you are not going forward with it.  Can you also do the same for the date previously offered for Ms. Sze, August 10 at 10 am?")  That same day, July 25, your office again confirmed the depositions and promised to "send out Notices for the deposition later this evening or tomorrow morning" i.e. July 25 or July 26.  The next day, July 26, your office confirmed the depositions a third time and promised that the deposition notices and zoom information would be sent "out shortly."

Plaintiffs unilaterally canceled Mr. Gosain's deposition that was scheduled to proceed every day this week also with 2 business days' notice.  We now need to reschedule that as soon as possible.  Now Plaintiffs are doing the same for the depositions they asked for.   We have asked what Mr. Gosain's situation is and how it impacts this case,  *see* July 22, 2022 email, but you have not responded.   As I stated in my email from July 22: "While my clients are more than willing to confer on the best ways to address all of the above in light of the situation, my clients also cannot be further prejudiced on their ability to collect evidence and defend this lawsuit.  Unfortunately, your clients have had a long history of not complying with discovery, avoiding depositions, and not always being entirely truthful to the Court or counsel.   This history and background makes it a little more complicated and difficult to find a resolution that works for all parties."

Let me know if you want to confer on these issues over the phone and when you can do so this morning.

Thank you, Peter

---

**From:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Sent:** Thursday, July 28, 2022 7:53 AM
**To:** Bales, Peter <pbales@longlevit.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>; gstilson@vmbllp.com; kbridgman@vmbllp.com; Neil Ison <neilisonlaw@gmail.com>
**Subject:** Re: Deposition dates (Merlin Defendants)

Gentlemen:

I have been instructed to reschedule the depositions for next week. Please confirm. Mr. Gosain's situation, of which you are all aware, precluded any earlier notice.

Get Outlook for iOS

---

**From:** Bales, Peter <pbales@longlevit.com>
**Sent:** Monday, July 25, 2022 1:40:39 PM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>; gstilson@vmbllp.com <gstilson@vmbllp.com>; kbridgman@vmbllp.com <kbridgman@vmbllp.com>
**Subject:** RE: Deposition dates (Merlin Defendants)

Mike,  By no later than tomorrow at 10 am PST, which is a week from this deposition, can you please confirm that Mr. Jacobellis deposition will be going forward on the date and time we offered a while back, August 2, at 10 am.  If so, please get us a deposition notice with the zoom information.  I do not want to spend my time and my client's time preparing for this deposition if you are not going forward with it.  Can you also do the same for the date previously offered for Ms. Sze, August 10 at 10 am?

As I mentioned last week, we need to reschedule Mr. Duffy.  Does 9-15-23 work for all?

We also need to reschedule Mr. Merlin.  Does September 12 work for all?

Let's get this finalize tomorrow so we can plan accordingly.

Regards, Peter

---

**From:** Bales, Peter
**Sent:** Monday, July 18, 2022 4:25 PM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica
<jmacgregor@longlevit.com>; gstilson@vmbllp.com; kbridgman@vmbllp.com
**Subject:** RE: Deposition dates

Mr. Sydow,  I am writing to confirm that the deposition of Mr. Gosain is proceeding as noticed.  For next
week, Merlin plans on splitting this limited available time with the Bergquist defendants at this time so I
will plan on proceeding on Monday, Tuesday, and half of Wednesday, with Bergquist taking the
remaining time.  Can we also get some more dates in August to continue this deposition?  If we need to
cancel court reporters and avoid fees incurred for preparing for this, I need to know today.

I just learned that we will need to re-schedule Mr. Duffy's deposition.  Does 9-15-23 work for all?

Can you send out timely deposition notices for the other Merlin deponents on the dates offered so we
can get those confirmed?

Thank you, Peter

---

**From:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Sent:** Monday, July 11, 2022 9:25 AM
**To:** Bales, Peter <pbales@longlevit.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica
<jmacgregor@longlevit.com>; gstilson@vmbllp.com
**Subject:** Re: Deposition dates

Mr. Bales, Mr. Gosain provided the dates he is available for his deposition and has been sent your notice
and subpoena. I have calendared the dates for the deposition of Mr Gosain, as well as those of Victor
Jacobellis, Denise Sze, Mr. Merlin, and Mr. Duffy on the dates you agreed to produce them.

With regard to the deposition of Mr. Gosain, I have made and do not make representations concerning
his condition and availability. I have no personal knowledge of those matters and convey information
received from him concerning thos matters as they effect scheduling.

Michael D. Sydow
The Sydow Firm
3355 W. Alabama, Suite 444
Houston, Texas 77098
(713) 622-9700 [Telephone]
(713) 552-1949 [Telecopier]
michael.sydow@thesydowfirm.com

## NOTICE BY THE SYDOW FIRM

**To the extent this communication contains any statement regarding federal taxes, that**

statement was not written or intended to be used, and it cannot be used, by any person (i) as a basis for avoiding federal tax penalties that may be imposed on that person, or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

This message, as well as any attached documents, contains information from the law firm of The Sydow Firm that is confidential and/or privileged, or may contain attorney work product. The information is intended only for the use of the addressee named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. If you have received this message in error, please delete all electronic copies of this message and its attachments, if any, destroy any hard copies you have created, without disclosing the contents, and notify the sender immediately. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege.

Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

**From:** Bales, Peter <pbales@longlevit.com>
**Date:** Monday, July 11, 2022 at 10:38 AM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>, MacGregor, Jessica <jmacgregor@longlevit.com>, gstilson@vmbllp.com <gstilson@vmbllp.com>
**Subject:** RE: Deposition dates

Mr. Sydow, I never received a response to my emails below regarding Rajiv Gosain's deposition. As such, we went ahead and noticed Gosain's deposition to proceed on the dates offered. That notice was served last week. See attached. If there is any reason this deposition cannot proceed as agreed and as noticed, please let us know immediately so we can confer on the same. As you have seen, there are also further document demands that accompany the notice. Please ensure those documents are produced as requested.

Also, as we have previously requested several times over the last few weeks, please provide further available dates that we can schedule to continue and hopefully complete this deposition. Thank you, Peter

**From:** Bales, Peter
**Sent:** Wednesday, July 6, 2022 8:26 AM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>; gstilson@vmbllp.com
**Subject:** RE: Deposition dates

Mr. Sydow, I never received a response to my inquiry below. I will assume the times proposed work for Plaintiff and counsel and proceed to issue a deposition notice. If that is not the case, please let me know today. Also, please provide all available dates in early August to complete Mr. Gosain's deposition.

Thank you, Peter

**From:** Bales, Peter
**Sent:** Thursday, June 30, 2022 11:07 AM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica
<jmacgregor@longlevit.com>; gstilson@vmbllp.com
**Subject:** RE: Deposition dates

Mr. Sydow, Although Mr. Gosain continues to refuse to provide supporting documentation or
sufficiently substantiate his position that his deposition should be limited to 2 hours, Defendants will
proceed with commencing Mr. Gosain's individual deposition during the week offered while reserving all
rights.  Defendants propose that Mr. Gosain and counsel carve out and reserve at least 10 am to 12:30
pm PST every day on July 25, 26, 27, 28, and 29.  This 2.5 hour period is meant to account for 2 hours of
testimony and two 15 minute breaks on the hour.  **Please confirm as soon as possible and no later than
July 1, so we can get out our deposition notice.**

As I mentioned previously, we will need more dates than these to have any chance of completing this
deposition under these conditions.  Now that the parties have some further time to complete discovery,
please get us all available dates in early August to complete Mr. Gosain's deposition.  As previously
explained, Merlin Defendants will need to complete Plaintiffs' depositions before Plaintiffs take
deposition of any Merlin defendants.

Defendants will proceed with this deposition via Zoom based on your representations regarding your
client's health and location, but Defendants reserve the right to have any further deposition in
person.  The general rule with respect to the location of depositions is that the plaintiff must produce its
witnesses in the district in which the plaintiff instituted the action, i.e. the Northern District of
California.  Defendants also will require Plaintiffs to appear in person at trial.

Peter

**From:** Bales, Peter
**Sent:** Wednesday, June 29, 2022 10:34 AM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>; gstilson@vmbllp.com
**Cc:** Amber Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>
**Subject:** RE: Deposition dates

Please ask your client if he has any documentation or doctor recommendation to support the 2 hour
limitation.

**From:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Sent:** Wednesday, June 29, 2022 10:32 AM
**To:** Bales, Peter <pbales@longlevit.com>; gstilson@vmbllp.com
**Cc:** rajiv.gosain@gmail.com; Neil Ison <neilisonlaw@gmail.com>; Amber Kaiser
<amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>
**Subject:** Re: Deposition dates

I am currently available during all those dates, but reserve the right to schedule other matters until your
desired dates are confirmed. It is my understanding that Mr. Gosain is also available on those dates. I do
not have anything other than Mr. Gosain's declaration concerning his condition, a copy of which has
been furnished to you, concerning his request for the 2 hour per day limitation.

Get Outlook for iOS

---

**From:** Bales, Peter <pbales@longlevit.com>
**Sent:** Wednesday, June 22, 2022 12:58 PM
**To:** Michael Sydow <michael.sydow@thesydowfirm.com>; gstilson@vmbllp.com
<gstilson@vmbllp.com>
**Cc:** rajiv.gosain@gmail.com <rajiv.gosain@gmail.com>; Neil Ison <neilisonlaw@gmail.com>; Amber
Kaiser <amber.kaiser@thesydowfirm.com>; MacGregor, Jessica <jmacgregor@longlevit.com>
**Subject:** RE: Deposition dates

Mr. Sydow, Thank you for your letter.  A few questions to help with conferring on deposition scheduling
for Mr. Gosain's deposition:

1. **Dates and Times Available**:  Is Mr. Gosain and his counsel available every day from July 25-
   30?  If so, what times?  Even if we were able to do 2 hours a day of testimony (not counting
   breaks) for the 5 business days during that time period, that would only give us 10 hours of on
   record testimony, at best, and probably end up being something less than that.  I think we need
   to reserve at least 14 hours of testimony time at this point.  Assuming Defendants agree to this 2
   hour a day of testimony proposal (see question below), we will need other available dates.  Do
   you and your client have other available dates in June and July per the Court's Order?
2. **Documentation to Support the 2 hour limitation request**:  Mr. Gosain requests a 2 hour
   limitation, but he has not provided any doctor's note or other medical documentation to
   support that limitation.  *See* Gosain 6-9-22 Declaration at para. 13 ("I believe that my deposition
   should be limited to two hours per day, given my health issues and lack of energy/mental
   acuity."); and Sydow 6-21-22 Letter (Mr. Gosain "requests on a 2 hour per day limitation…").  If
   Mr. Gosain has a doctor recommendation or other documentation to support this hour
   limitation, can you please provide it so we can evaluate it and consider this request.

Thank you, Peter

---

**From:** Michael Sydow <michael.sydow@thesydowfirm.com>
**Sent:** Tuesday, June 21, 2022 3:48 PM
**To:** gstilson@vmbllp.com; Bales, Peter <pbales@longlevit.com>
**Cc:** rajiv.gosain@gmail.com; Neil Ison <neilisonlaw@gmail.com>; Amber Kaiser
<amber.kaiser@thesydowfirm.com>
**Subject:** Deposition dates

Please see attached.

Michael D. Sydow
The Sydow Firm
3355 W. Alabama, Suite 444
Houston, Texas 77098
(713) 622-9700 [Telephone]
(713) 552-1949 [Telecopier]
michael.sydow@thesydowfirm.com

**NOTICE BY THE SYDOW FIRM**

**To the extent this communication contains any statement regarding federal taxes, that
statement was not written or intended to be used, and it cannot be used, by any person (i)
as a basis for avoiding federal tax penalties that may be imposed on that person, or (ii) to**

promote, market or recommend to another party any transaction or matter addressed herein.

This message, as well as any attached documents, contains information from the law firm of The Sydow Firm that is confidential and/or privileged, or may contain attorney work product.  The information is intended only for the use of the addressee named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful.  If you have received this message in error, please delete all electronic copies of this message and its attachments, if any, destroy any hard copies you have created, without disclosing the contents, and notify the sender immediately.  Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege.

Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

# EXHIBIT 3

1

2

3

4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

5

6

RAJIV GOSAIN and HAPPY VALLEY
ROAD, LLC,

Case No. 18-CV-06343 HSG

Plaintiffs,

Action Filed:  October 16, 2018

7

vs.

8

9

BERGQUIST WOOD MCINTOSH SETO,
LLP, BRUCE MCINTOSH, AND STEPHEN
SETO,

10

Defendants.

**DECLARATION OF RAJIV GOSAIN**

11

12

13

BERGQUIST WOOD MCINTOSH SETO,
LLP, BRUCE MCINTOSH, AND STEPHEN
SETO,

Third Party Plaintiffs,

14

vs.

15

16

MERLIN LAW GROUP, P.A., DENISE SZE,
MICHAEL DUFFY, WILLIAM F. "CHIP"
MERLIN, and LAST & FAORO,

17

Third Party Defendants.

18

    1.     I, Rajiv Gosain, am a competent adult, am a permanent resident of France, and am the

19

manager of Plaintiff Happy Valley Road, LLC, in the above-entitled action.

20

    2.     The facts contained in this Declaration are within my personal knowledge and I could and

21

would competently testify to them if called as a witness.

22

23

    3.     In about mid-December 2021, I became very ill and was hospitalized in the hospitals

24

located in Gassan and Frejus in France. I have also been treated in specialist clinics in Marseilles, Nice

25

and Agen. Voluminous medical records are available in the French language which the Court may review

26

in camera. French law prohibits public dissemination of medical records. (CJEU Case No 3111/18; 16

27

28

July 2020) My Doctor's certificates (French original and certified translations) prohibiting work or travel were earlier submitted to this Court.

4.      I was diagnosed and treated for pulmonary embolism, cardiac issues, extremely high blood pressure and adrenal tumors (pheochromocytoma). I am still under medical treatment, am very weak, lack mental acuity, and am struggling with performing activities of daily living.  (ADL)

5.      My symptoms of fatigue and weakness have increased steadily.  I cannot maintain a regular sleep cycle, suffer from sleep deprivation, and am unable to focus on work.

6.      I have tried to assist mine and Happy Valley's attorney, Michael D. Sydow, in defending this case in California. Owing to my incapacity I have been unable to substitute in alternative Counsel to The Sydow Firm.   I am the person most knowledgeable of the facts of these very complex cases. However, my efforts have been below the standards of care that these cases require arising from my being incapacitated.

7.      Apart from my own poor health, catastrophe has  struck my family and now caused me to request a stay of discovery in this action. On July 21, 2022, my dear father passed away from cancer.  I am distraught and must seek the help of a psychiatrist/ other appropriate mental health practitioner to help me cope with this unbearable loss.

10.      I am the eldest son.  My family and I conform our behavior to the traditional rules of Brahmin Hindus of Gotra (caste) Angirasa.  Since my father has passed, I have certain mandatory duties that I must attend to in India, including, among other duties, taking his  mortal remains to the holy city of Haridwar, India for immersion in the Ganges River, as were my forefathers for several generations prior. In Haridwar, there is a priest whose ancestors and now him, have been manually recording the

**DECLARATION OF RAJIV GOSAIN**
-2-

births and deaths of my father's ancestors for over a thousand years.  I am also expected to participate in various mandatory rituals in other religious places as set by Vedic tradition, such as Kurukshetra and Gaya. It is also possible that I may be instructed by the Gosain priest in Haridwar to make a pilgrimage to "Gosainthan", located in the Tibetan Himalayas to pay homage to the Gosain caste in whose honor this peak is named. (via Gosainkunda Lake, Langtang National Park, Nepal). This pilgrimage will take some time and there will be no access to telephones or internet.  https://thereaderwiki.com/en/Shishapangma

11.    I may not avoid these religious and spiritual duties based on any litigation/work commitments  as the welfare, reputation, dignity, and memory of my family is paramount, and I cannot defile the soul and memory of my father by taking any actions that would prevent its Moksha/Mukti (freedom from the eternal cycle of life, death, and rebirth). I am also required to conduct prayer rituals for three preceding paternal generations so that my father's soul may be reunited with them according to the Vedic scriptures. A general overview of the details of these rituals as summarized above are described at:

https://www.vedicfuneral.com/p/final-rites-and-rituals.html.

http://www.finaljourneyseminars.com/?page_id=438

https://en.wikipedia.org/wiki/Indian_rituals_after_death

12.    Attached as **Exhibits 1 and 2** to this Declaration are a selective reproduction of a scholastic publication by Final Journeys and by the University of California detailing the rituals required and the relevant time frames, if the Court should desire to read these.

13.    The dutiful fulfillment of these religious requirements will necessitate at least four months of my complete unavailability, or even longer, depending upon my own physical health because the

1

2

3    required trip to India and performance of my duties will cause further physical and psychological stress

4    upon my body and mind, given my already weakened state.

5         14.    I do not seek a stay in this action for any motions and appeals that can be handled by

6    Counsel without my involvement.

7         15.    I am willing to have my deposition taken without full notice timing on the issues raised in

8    this motion.  I believe that my deposition should be limited to two hours per day, given my health issues,

9    lack of energy and mental acuity.  I will agree to attend the deposition virtually.

10        I declare under penalty of perjury under the laws of the State of California that the foregoing is

11   true and correct.

12

13

14

15

16

17        _____

18        Rajiv Gosain

19

20

21

22

23

24

25

26

27                                **DECLARATION OF RAJIV GOSAIN**
                                            -4-

28

1

2

3

## **EXHIBIT 1**

4

5

http://www.finaljourneyseminars.com/?page_id=438

6

### Sixteen *Ekoddiṣṭa-ṣṛāddhas*

7

8

The period of the ten *pūraka* rites was considered a period of mourning. It was also a time of impurity, which meant that the family members would not travel to temples or other holy places. Nor could any sacred ceremonies take place within the family. Ordinarily this time ended after the tenth day with the

9

final dissolution of the *ātivāhika* body and the creation of the *preta* body. **The subsequent *preta* stage lasted for one year. During this time sixteen *ekoddiṣṭa-ṣṛāddhas* were to be performed to maintain**

10

**the *preta* body of the deceased and elevate the departed soul to the status of a *pitṛs*.** The last of these

11

*ṣṛāddhas* was called the *sapiṇḍi-karaṇa* at which time the departed soul finally became a *pitṛ.* The timing of these sixteen *ṣṛāddhas* is as follows. The first *ṣṛāddha* is performed on the eleventh day after death.

12

**After that twelve *ṣṛāddhas* are performed in each lunar month on the *nakṣatra* anniversary of the death. Two further *ṣṛāddhas* are performed on the six-month anniversary of the death.** These are

13

usually performed on the day before the regular sixth month and twelfth month *nakṣatra ṣṛāddhas*. The final *sapiṇḍi-karaṇa-ṣṛāddha* was performed on the day after the last *nakṣatra ṣṛāddha.* In this way a

14

total of 16 *ekoddiṣṭa-ṣṛāddhas* were performed.

15

### *Sapiṇḍi-karaṇa* the final *Ṣṛāddha*

16

17

The *sapiṇḍi-karaṇa-ṣṛāddha* is the last of these sixteen *ṣṛāddhas* that are meant to elevate the departed soul to the rank of a *pitṛ.* It is performed in a similar manner to the previous *ṣṛāddha* with the following

18

additions. The performer sets out four vessels with water, sesame, and fragrance. **Three are for the standard hierarchy of *pitṛs,* the father, the grandfather, and the great grandfather, and the fourth**

19

**is for the recently departed soul.** The performer then pours the vessel meant for the recently departed soul into the vessels of the three standard *pitṛs*. Similarly, four cakes of rice (*piṇḍas*) are prepared and

20

the cake belonging to the recently departed soul is broken up and added to the three cakes belonging to three standard *pitṛs*. **After the performance of this rite the *preta* being becomes a *pitṛ* and joins the**

21

**assemblage of fathers in their abode (*pitṛ-loka*).**

22

23

24

25

26

27

28

**EXHIBIT 2**

https://publishing.cdlib.org/ucpressebooks/view?docId=ft6k4007rd&chunk.id=d0e28117&toc.depth=1&toc.id=d0e25769&brand=ucpress

**The activities of the mourning period.**

The cremation is considered the last of the *samskara* s. What now follows continues the effect of the *samskara* s in effecting and signaling an individual's movement from one culturally defined stage of being to another, but now the locus of the individual's life, now his or her life in death, is removed progressively further and further from house, household, and city.

**Following the cremation there is an elaborate cycle of post death ceremonies and procedures.** Those taking place in the ten days immediately following the death and ending when the family is purified of its post death pollution are called the *dasa kriya* , the "ten works."[64] In the subsequent months and years there is another series of special ceremonies on various anniversaries of the death, as well as the special observances incumbent on or optional for bereaved people during the course of the festival year, which we have noted in our discussions of the annual cycle. We will only outline these ceremonies here, noting some details that bear on other aspects of this study.

---

— 681 —

The *dasa kriya* period revolves around the activities of the *kriya putra* and the evolution of the spirit of the deceased person. **The *kriya putra* remains on the *cheli* alone or, sometimes, accompanied by a male member of the household. During this period the *kriya putra* wears only a loincloth, wrapping himself in a shawl if it is cold, cooks his own food, sleeps on a straw or wool mat on the ground, and does not shave**. He is unable to touch anyone except the man who may keep him company and is thus even more polluted than the household and *phuki* members who also have been polluted by the death.

On each day of the mourning period the *kriya putra* boils rice at home and carries it to the river, taking care not to touch anyone. In upper level *thars* the *kriya putra* is accompanied in his trips to the river by a man from the borderline clean Bha *thar* who will later, on the tenth day, consume rice that has been in contact with the corpse to ensure that the spirit will take a human form (chap. 10). The Bha carries flowers, colored pigment, and other materials that are to be used in worship. The Bha is also supposed to instruct the *kriya putra* at the riverside in the proper steps of the worship.[65] The Bha makes a *linga*[*] out of a kind of clay that comes from some distance below the earth to represent Siva as the deity "Hatakesvara[*] ,"[66] a god said to dwell under the earth. Offerings of milk and water are poured into small terracotta

dishes placed on either side of the *linga*[*] . A clay waterpot with a hole in the bottom is placed on a tripod over the *linga*[*] and an "umbrella" formed from *kusa* grass is placed in the pot. Each morning the *kriya putra* takes river water and puts it into the clay pot, where it slowly drips through the hole onto the *linga*[*] . It is said that the Siva *linga*[*] represents the deceased person. The water is said to cool the spirit of the dead person, which is in its *preta* form.[67] Now the *kriya putra* forms the rice into three bails—called *pya(n)* in Newari or *pinda*[*] in Sanskrit[68] —as offerings to (in the following order) the crow, the dog, and, finally, the *preta* . The *pinda*[*] offered to the *preta* is both an offering to and a representation of the dead person, as is the case with *pindas*[*] in all the subsequent death ceremonies.[69] The three *pindas*[*] are then given various offerings. Finally, the *kriya putra* throws the crow *pinda*[*] across the river as food for the crows, puts the dog *pinda*[*] on the near river bank as food for the dogs, and throws the *preta pinda*[*] onto the mud in the center of the river (if the river is low as it is during much of the year), where it is supposed to be picked up and supposedly eaten by the same Po(n) who was also responsible for taking the funeral cloths from the cremation grounds.

The *kriya putra* then returns to his home. He cooks his own food, restricting himself to one meal a day. He is supposed to spend his time there reading sections of the Garuda[*] Purana[*] dealing with life after death.

On the fourth day of the mourning period close friends, relatives, and members of the death *guthi* come to the *cheli* to talk with the *kriya putra* .[70] A focal day in the course of the *dasa kriya* is, depending on the *thar* , the fifth or seventh day.[71] On this day a married-out daughter of the household (or, if there is none, of the *phuki* ) returns to the house, and goes to the *cheli* , where she boils rice. She forms the rice into three portions, and places them in three bamboo baskets. Two of the portions are simply lumps (in contrast to the variously shaped *pinda*[*] ), but the third is often formed into the shape of a body. This third por-

— 682 —

tion is given to a Jugi who will come to the house on this day, the same Jugi who earlier gathered the death clothes at the *chwasa* . This offering is called the "giving of the fifth-day (or seventh-day) body." The three portions of rice are offerings, but the portion offered to the Jugi, which is called the *preta bali* , the *preta* sacrificial offering, also represents the *preta* itself. The Jugi's act might be thought to represent an agent in the forming of the *preta's* body, as are in that case explicitly, the activities of the Bha on the tenth day after death. One of the other two portions is brought by the daughter to the riverside, where it is left as an offering to the crows. Late at night the third portion, called the *pakha ja* , or the "boiled rice of the roof eaves,"[72] is brought from the *cheli* and placed outside of the house at the *pikha lakhu* boundary. It is left there for a while, sometimes only a few minutes, and sometimes throughout the night. It is said that the hungry *preta* is waiting outside the house to be fed. Household members keep watch in order to prevent dogs from disturbing the rice. Then, in a further distancing movement, the *pakha ja* is brought to the river—for upper-status *thars* by a Jyapu client—and thrown into it.

The *kriya putra* continues his daily *dasa kriya* activities on the fifth or seventh day, and on the following days. On the tenth day following the cremation a ceremony is held at the riverbank, an elaboration of the *kriya putra's* daily morning offering. The ceremony, which includes offerings of food and drink to the spirit and the construction of *pindas*[*] , is the first of a long series of such ceremonies called *sraddhas* ,[73] rites characterized by offerings and the making of *pindas*[*] .[74] For the upper-level *thars* the Bha who has attended the *kriya putra* on each morning is again present to help prepare and (traditionally) to direct the offerings. All members of the *phuki* are supposed to attend this tenth-day *sraddha*[*] .

Now, in part because of the successful performance of the *dasa kriya* , the spirit of the dead person is said to have its full human form, and to be no longer a *preta* .[75] The purification procedures that terminate the period of the *dasa kriya* begin at this point. These purifications are called *du bya(n)nkegu* , the "*du* " purification.[76] At least one man and woman representing each of the *phuki* households is supposed to come to the river for purification. After they have all purified themselves, the *kriya putra* , finally, does his own purification. Other members of the *phuki* will be purified at home or at the house of a Nau.

After the *du bya(n)kegu* at the river there is a ceremony during which the *kriya putra* , facing west toward the setting sun, makes an offering of water and *guta* grass (*Cynodon dactylon* ) to the sun. The *kriya putra's purohita* stands in front of him, and thus also, to his west, and the *kriya putra* circumambulates him three times, "being careful not to step on the *purohita's* shadow." A Nau stands nearby with a ceremonial mirror. He hands it to the *purohita* , bowing in respect, and the *purohita* presents it to the *kriya putra* , who shows the mirror to the sun, and then looks into it at himself.[77] The other *phuki* members now worship the sun. Now, having become purified and having worshiped the sun, they will be able to worship (but still not touch until the time of the still-to-come *sapinda*[*] *sraddha*[*] ) other deities.[78] Now the *purohita* hands the *kriya putra* a set of white mourning clothes that he will wear during the following year until the first annual anniversary of the death.[79]

— 683 —

At sunset on this tenth day, the *du bya(n)nkegu* purification having been completed earlier in the day, the *kriya putrs* accompanied by two or three *phuki* members goes to the river. They place on the riverbank on the river's *far* side, fragments of beaten rice (the same material that was offered to the *preta* just prior to cremation), two oil-lamp wicks, and some sprigs of *kusa* . These are offerings to the dead person who is now beginning a journey to the realm of Yama, where his or her *karma* -based post-death transformation will be effected. On the fifth or seventh day after death the *preta* had been given offerings in the cremation grounds, outside the house, and at the near bank of the river. It now moves still further off in its more human, less uncanny, ethereally embodied state.

After the river offerings have been made, substantial gifts[80] are given to the Bha. These include the item of food that he is to eat that will aid the human formation of the spirit's ethereal and, in some accounts, its eventually reincarnated body.

https://publishing.cdlib.org/ucpressebooks/view?docId=ft6k4007rd&chunk.id=d0e28525&toc.depth=1&toc.id=d0e25769&brand=ucpress

**Death related activities following the dasa kriya mourning period.**

There will be further offerings to the humanoid spirit in the next few days, and the house itself must be further cleansed of its death pollution. During the year following a death, men who have lost a parent will wear white and will not wear leather shoes or belts. If a mother is lost, men are not supposed to drink milk for one year; if it is a father, they are not supposed to eat curds.[81] If a male *phuki* member other than a man's father dies, men are supposed to wear a white cap for forty-five days; if it ,is a female household member other than a man's mother, the household men are supposed to wear white caps until the twelfth day after the death.[82]

**The end of the ten-day mourning period is the beginning of a long series of *sraddha*[*] ceremonies, centering on offerings to the spirit, whose condition is now variously understood. The exact number, timing, and details of procedures vary according to the level and Brahmanical orthodoxy of various *thars* .**[83] Some of these are considered to be of predominant importance, and thus are more generally done. These are the ceremonies of the eleventh, twelfth,[84] and thirteenth days, the forty-fifth day, the sixth month, the first yearly anniversary of the death, and each subsequent yearly anniversary of the death. In the same way as the events of the *dasa kriya* period helped form the *preta's* body, the *sraddha*[*] ceremonies of the first year aid the formed spirit's movement through its ensuing adventures.

On the eleventh day after death there is a ceremony called *swama lhuyegu* , the "washing away of sorrow." Males of the household and of the *phuki* go to the river, where the *kriya putra* offers a single *pinda*[*][85] made of wheat flour, to which other substances are added, to the dead person. Although the sprit is supposed to be in its human form by this day, this offering is still called a *preta pinda*[*] , and this procedure is a kind of redundant coda to the *dasa kriya* . The *pindas*[*] formed on the next, the twelfth (or for many *thars* the forty-fifth) day will have a different name and significance, and the ceremonies associated with them will be within the dry.

In this eleventh-day ceremony the *kriya putra* , facing south, worships an oil

— 684 —

lamp said to represent the deity "Siddhikesvara." in the course of the worship the *preta pinda*[*] made by the *kriya putra* is worshiped and given offerings including flowers, cloths, *sinha(n)* powder, fruits, incense, and an oil wick. When the *puja* is finished, the *kriya putra* places the *pinda*[*] on a patch of exposed soil in the river, whence a Po(n) is supposed to come and take it. Now the attending family and *phuki* members wash in the river. Then in an act of purification the family *purohita* sprinkles water and

milk, which had first been poured over a Siva *linga*[*] , on each person in turn, starting with the *phuki naya* : and ending with the *kriya putra* . The *kriya putra* takes water of high purity, *Ga(n)ga jal* , and parities the area where the daily morning *dasa kriya* worship had taken place. The men now return to the *kriya putra's* house on the path he had used each day during the *dasa kriya* . As they go, the *kriya putra* sprinkles *Ga(n)ga jal* along the path. On reaching his house he walks around it, continuing to sprinkle the water.

These acts of purification of the residues of the death are followed later in this day or on the next, the twelfth day,[86] by another important act of purification called the *gha:su yajña*[87] or, in ordinary Newar reference, the *lha panegu* , "hand drying." The *gha:su yajña* is done among the upper-level *thars* in Bhaktapur by a special class of priests, the Tini (chap. 10).[88] Lower *thars* perform this ceremony with the aid of a daughter who had married out of the house (and whose household had thus not been contaminated by the death), who returns to the household to light the fire, and so now do many upper-level families because of a shortage of Tini priests in Bhaktapur in recent years.

In the course of this ceremony the Tim performs a simplified fire sacrifice, or *yajña* , on the *cheli* of the house, in the course of which, in contrast to ordinary fire sacrifices, a meat-containing offer of *samhae* is made. The focal deity of the offering is Siva.[89] People of the household, joined by a man or woman representing each of the *phuki* families, hold their hands toward the fire—the act of *lha panegu* itself. The fire, or its smoke, is thought to purify them and—through the medium of the representative—each of their households. The smoke of the fire moves up through the *kriya putra's* house, thus purifying it of dangerous influences.[90]

Brahman households, and a few upper-level Chathariya households, perform a complex set of additional ceremonies on this day. These are thought to be "Vedic" ceremonies, and include a fire ceremony, offerings of the five auspicious products of the cow, and a *Vrsotsarga*[*] ceremony, the setting of a cow and a bull "free to roam." These ceremonies are thought to enhance the dead person's chances of going to a "good place" after reaching Yama's realm.

If there is time on the eleventh day, and if not, then on the twelfth day, a ceremony called an *apadutaegu* will be done. An *apa* is a small clay waterpot with a spout.[91] In the course of the ceremony five or (for upper-level *thars* ) seven *apas* are made use of. One, dedicated to Surya, is placed in the sunlight; one in the neighborhood Ganesa[*] temple; one at a nearby well; one, dedicated to Siva, at the side of the river; and one within the house. Upper level *thars* place two additional *apas* , one at their Aga(n) House, and one "dedicated to all the deifies" outside of their houses in the courtyard of the house.

— 685 —

During the *apadutaegu* fourteen *preta pindas*[*] are made. These fourteen *pindas*[*] are conceptually grouped with the *preta pinda*[*] made on the eleventh day, and with one that will be made during the *sapinda*[*] *sraddha*[*] (which will be held later either on this day or else on the forty-fifth day) as a set of sixteen *preta pindas*[*] . The sixteen *preta pindas*[*] are said to make a full body for the deceased person's *preta* , the body being completed with the making of the last *pinda*[*] during the *sapinda*[*] *sraddha*[*] . The *preta pindas*[*] are also said to represent the stage of the journey of the *preta* , a journey that in one sense or version ends at the time of the *sapinda*[*] *sraddha*[*] when the *preta's* body is complete and—no longer a *preta* as it is now in its ethereally embodied form—joins with the *pitrs*[*] , the "ancestors." While these ideas are not consistent with the doctrine that this formation had been completed during the *dasa kriya* period, they reflect not only some general inconsistency in doctrines about details of postmortem happenings but also, perhaps, an effort to ensure that the formation and progress of the spirit be in accord with all the various ambient doctrines about the spirit's whereabouts, forms, and tasks.

The work of the first twelve days is said to summarize what was in some distant past a full year of death work, during which the *kriya putra* had to remain on the *cheli* and perform mourning ceremonies. Each day in this view represents a month.

The essential ceremony of the twelfth or forty-fifth day[92] is the *sapinda sraddha*[*] . "*Sapinda*[*] " refers to a group of living and dead kin who are thought to share the same body (*pinda*[*] ) or body particles.[93] The "*sapinda*[*] *sraddha*[*] " is a variant of the traditional South Asian *sapindikarana*[*] *sraddha*[*] ceremony (cf. Kane 1968-1977). This is the time when, in one of the parallel conceptions of the fate of the soul, the soul changes from its *preta* form and enters into the community of the *pitrs*[*] , the "fathers" or "ancestors." In the course of the *sapinda*[*] *sraddha*[*] a *pinda*[*] representing the dead person—a *pinda*[*] considered still to be a *preta pinda*[*] , the final one in the series of death ceremonies—is, in the course of an elaborate and largely traditional ceremony, physically joined with three *pinda*[*] s representing the ancestors of three ascending generations.[94] This represents the transformation of the *preta* not only into an embodied spirit but also into an ancestor—the spirit of the deceased person having now reached the *pitr*[*] *loka* , the realm of the ancestors.[95] The *sraddha*[*] ceremonies that will follow the *sapinda*[*] *sraddha*[*] during the first year also represent a journey, the journey of the soul now in its ethereal body, its second, "*bhogadeha,* " form, toward Yama's realm**.**

**The timing of the subsequent *sraddha*[*] ceremonies depends on when the *sapinda*[*] *sraddha*[*] had been done. When it is done on the twelfth day, it is followed by another *sraddha*[*] ceremony on the thirteenth day, <u>and then subsequent ones at one month, forty-five days, six months and one year after the death</u>.[96] For those who do the *sapinda*[*] *sraddha*[*] on the forty-fifth day, the sequence of subsequent *sraddhas* begin with the sixth-month ceremony.**

The spirit's journey to Yama's realm continues during the first year. In the ceremonies of the annual Saparu festival [45] activities by the community and the relatives of the deceased person help the spirit

to cross over the river bounding that kingdom on its eventual arrival there. Finally, safely arrived in King

— 686 —

Yama's realm, the person's fate will be announced, the reward or punishment not only for his or her own moral and ritual actions during this and previous lives but, in a somewhat uneasy relationship to this idea, also for the adequacy of the enormous ritual efforts of *kriya putra* , household, extended family, and the people of Bhaktapur.

# EXHIBIT 4

## DECLARATION OF RAJIV GOSAIN

My name is Rajiv Gosain. I have personal knowledge of the facts contained in this Declaration.

I, individually and as a representative of Happy Valley Road LLC, was served with discovery requests for production of documents.  Our Counsel, The Sydow Firm, had already produced about 33,000 pages of documents.  I was tasked with supplementing that production and produced approximately 192 MB of data and provided it to Counsel.  I have been informed by Counsel that this data was served on both defendants.  I did this work while being treated for my own severe health issues and while consoling my aged father on who is now on life support and has only a few days left before passing.  I worked as much as I possibly could within the bounds of human endurance, given these extenuating and deeply distressing circumstances.  I have not yet completed the task assigned.  On information and belief, there are voluminous emails and other documents that I must gather, review, and produce.  I will continue with my efforts as these unfortunate circumstances and my heath allow.

Of course, I will supplement the answers to Requests for Production in accordance with the Federal Rules of Civil Procedure as and when I have the capability of completing my diligent search.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on July 21, 2022.


_____

Rajiv Gosain, Individually



_____

Rajiv Gosain, for Happy Valley Road, LLC